# CHITTENDEN COUNTY.

## Hannah Mills *v.* Samuel E. Warner.

The cases, where it has been held that there was a sufficient change of possession of personal property, after sale, notwithstanding acts of intermeddling with the property by the vendor, which might amount to a seeming joint possession with the purchaser, are cases where, nevertheless, the purchaser alone had control and was the visible head and conductor of the business, in which the property was used, or employed. But where the vendor is the sole conductor of the business, and his possession and use of the property is not interrupted, the sale will be void as against creditors, notwithstanding the purchaser may own the farm upon which the property is used after the sale, and may live upon it with the vendor.

Where the purchaser of personal property had exclusive possession of the property for three or four weeks after the sale, and then the property went into the possession of the vendor and was used by him permanently in his own business, it was held, that the sale was void, as against a creditor of the vendor, who subsequently attached the property while thus in the possession of the vendor.

And where a portion of the property sold in such case, and thus possessed by the vendor after the sale, consisted of a horse; and the vendor subsequently, for the convenience and advantage of his own business, and, for aught that appeared, in his own name and ostensibly on his own account, exchanged this horse for another horse, it was held, that the horse thus substituted became as much a means of false credit, as the other had been, and that, while it thus remained in his possession, it was liable to attachment upon his debts.

Trespass for taking a wagon, a mare and a fanning mill. Plea, the general issue, and trial by jury, March Term, 1845,—Bennett, J., presiding.

The plaintiff claimed title to the property in question by virtue of a purchase from her son, Charles Mills, in March, 1843; and she gave evidence tending to prove, that at that time she purchased of Charles Mills a pair of horses, a sleigh, a harness, and the wagon

and fanning mill in question, in payment of a debt due to her from Charles Mills and Claudius Mills; that she then lived with her son Myron Mills, in Burlington; and that, immediately upon the sale, she caused Myron to take the horses, sleigh and harness to his house, and that they were kept there, for the use of the plaintiff, from two to four weeks. It appeared, that the plaintiff had a life estate in a farm in Colchester, which had been carried on by Charles Mills and Claudius Mills for two or three years previous to April, 1843, and that the property, claimed to have been purchased by the plaintiff, had, during that time, been kept and used upon the farm; that in April, 1843, the plaintiff contracted with Charles Mills to cultivate and manage this farm, upon shares, for two years, and that he continued in possession, for that purpose, until the time of this trial, and that during all this time, the plaintiff has resided upon the farm with him; that the wagon and fanning mill remained upon this farm, until they were attached by the defendant, in February, 1844; that in April, 1843, and from two to four weeks after the sale of the property to the plaintiff, the horses, sleigh and harness were taken back to the farm; and that the entire property, after that, was used by Charles Mills, in carrying on the farm, the same as it had been before the sale. It also appeared, that in the fall of 1843 Charles Mills exchanged one of these horses, which he had before sold to the plaintiff, for the mare sued for in this action; and that the mare was taken by him and used upon the farm, in the place of the horse, from that time until the time of the attachment. It also appeared, that in February, 1844, the property sued for was attached, as the property of Charles Mills and Claudius Mills, and that it was subsequently sold upon an execution in favor of the defendant against them,—which was the trespass complained of,—and that, at the time of the attachment, the property was upon the farm in the occupancy of Charles Mills, as above mentioned;—but it was shown that the officer, at the time of the attachment, had notice that the property belonged to the plaintiff.

Upon these facts the county court directed a verdict to be returned in favor of the defendant. Exceptions by plaintiff.

*George K. Platt* and *A. Peck* for plaintiff.

1. The facts reported show such a change of possession, as makes

this sale valid, within the rule laid down in *Wilson* v. *Hooper et al.,* 12 Vt. 653.

2. But, however the sale may have been as to attaching creditors, it was good, as between Charles Mills and the plaintiff, and vested the whole property in her. When the plaintiff, then, sold the horse for the mare in question, this made the sale perfect, so far, even, as against creditors, and left only the question, as to whose was the property in the mare;—which was entirely a question of fact, and should have been left to the determination of the jury.

*H. Leavenworth* and *Smalley & Phelps* for defendant.

1. As to the wagon and fanning mill, there is no pretence of any change of possession, unless based upon the fact, that some two or three weeks after the sale the plaintiff went to reside with Charles Mills upon the farm where the property was kept,—though he carried on the farm and used the articles in question. And in answer to this it is sufficient to say, that it has been repeatedly decided by this court, that a joint possession and control by vendor and vendee of personal property is never sufficient, as against creditors; but the possession must be permanent, visible and exclusive on the part of the vendee. *Weeks* v. *Wead,* 2 Aik. 64. *Allen* v. *Edgerton,* 3 Vt. 442. *Emerson et al.* v. *Hyde,* 8 Vt. 352. *Wilson* v. *Hooper et al.,* 12 Vt. 653. *Rockwood* v. *Collamer et al.,* 14 Vt. 141.

2. The ownership of the mare would of course be determined by the ownership of the horse, for which it was obtained; and the horse stands upon precisely the same footing with the other property, except that there was a change of possession of from two to four weeks. It is manifest, that this does not amount to the substantial, permanent and visible possession, which the court has always held necessary. *Weeks* v. *Wead,* 2 Aik. 64. *Dewey* v. *Thrall,* 13 Vt. 281. *Rogers* v. *Vail et al.,* 16 Vt. 327. *Stiles* v. *Shumway,* 16 Vt. 435.

The opinion of the court was delivered by

ROYCE, Ch. J. The case does not find, that the plaintiff took and maintained any other possession of the wagon and fanning mill, than such as should be implied in her ownership of the farm, and her residence upon it. But the contract with her son Charles, by which he was to carry on the farm for two years upon shares,

implied a right in him to possess and use this property in the execution of that contract. And it appears, that he accordingly did continue to possess and use it, as he had done before he sold it to the plaintiff. Under these circumstances it is clear, that the plaintiff's interest in the farm and her residence upon it were not sufficient to protect her purchase of this property, as against the creditors of Charles. The facts do not make a case like *Allen* v. *Edgerton*, 3 Vt. 442, *Hall* v. *Parsons*, 15 Vt. 358, and others of that class. In those cases, although there were acts of intermeddling with the property by the vendor after the sale, which might amount to a seeming joint possession with the purchaser, yet the purchaser alone had control, and was the visible head and conductor of the business in which the property was used, or employed. But here Charles was the sole conductor of the business. And as his possession and use of this portion of the property was never interrupted, the sale to the plaintiff must, thus far at least, be deemed fraudulent and void, in law, as against the defendant, a creditor of the vendor.

The plaintiff's right to recover for the mare must rest upon one, or both, of the two following grounds :—1, On the ground of her actual and exclusive possession of the horses bought of Charles, for a few weeks succeeding the purchase in March, 1843. It was decided in *Farnsworth* v. *Shephard*, 6 Vt. 521, that, if the purchaser of a horse takes actual and exclusive possession, and holds it for a period sufficient to render his possession and ownership notorious and well understood in the neighborhood, his title will be protected against a creditor of the seller, who afterwards attaches the horse, while in possession of the seller for a mere temporary purpose. It will be noticed, however, that the possession of the purchaser had been of much longer continuance in that case, than the present. And should we even admit, that the period, in this instance, was sufficient to satisfy the rule, yet the subsequent possession and use of the horses by Charles were not, as in the case cited, for a temporary purpose only. He had the permanent possession and use, and that in his own business. This is decisive against the plaintiff's right to recover, so far as it rests upon her own previous possession.

2. The other ground is, that Charles never owned the mare in question,—which was obtained in exchange for one of the horses bought of him. It is certain, that the case is not within the terms of

the rule of law, as hitherto enforced. Where it has appeared, that the debtor, in possession of the property, had possessed it in no other right than as bailee to the owner, the doctrine of constructive fraud has not been holden to apply. *Spring et al.* v. *Chipman*, 6 Vt. 664. But the doctrine should be held to comprehend a new case, when that is found to come fully within the reason and policy on which the doctrine is founded. And the present is obviously such a case. In principle and policy no distinction can be allowed, in reference to a creditor's right, between the horse in question and the one for which it was substituted. We do not decide, how this might be, had the exchange been made by the plaintiff herself, or by some third person acting as her agent; but here it was made by the debtor, for the convenience and advantage of his own business, and, for aught that appears, in his own name' and ostensibly on his own account. The horse obtained in exchange became as much a means of false credit, as the other had previously been; and justice to creditors would manifestly require, that it should be equally liable to their process. We therefore conclude, that the plaintiff has established no right to recover for any of the property claimed.

Judgment of county court affirmed,