CALEDONIA,
March,
1833.

HARVEY MOORE, vs. SILAS KELLEY.

That the possession of personal property must be changed, on a sale, to render such sale valid against the creditors of the vendor.

That it is not sufficient, that the vendor has, moved from the premises, where the property is kept, if the same remain under the care of the vendor's servant, and the sale not known even to that servant.

This cause came up from the County Court to be examined upon the following Bill of exceptions, to wit : Trespass for a two year old Steer and a yearling heifer.—Plea not guilty and trial by Jury.

It appeared in evidence, that, in March 1829, one Samuel Moore went into possession of a farm in Barnet, belonging to one Gibson, under a verbal lease for a year, Gibson stocking the farm, and Moore to have part of the increase of said stock, at the end of the term. That, in the fall of 1829, said Moore engaged in a job of lumbering at Northumberland, New Hampshire, and, for the convenience of said business, took his wife and child, and part of his furniture with him to Northumberland ; and neither he or his family ever returned to reside on said farm. That, upon so leaving said farm, said Moore agreed with one Whiting to take charge of the stock ; and, for that purpose, Whiting moved into the house, which Moor left, and tended, and took charge of, the stock on said farm, till about the last of April 1830. About the first of said April Moore, without his family returned for a temporary purpose, with his teams, which were immediately attached. He came to a settlement and division of the stock with Gibson, and, in his share, received one of the cattle sued for, the other being previously the property of said Moore. He thereupon sold both the cattle in question to the plaintiff, in satisfaction of a sum of money, which the plaintiff had paid for him to a third person. Said Moore claiming to have a small quantity of hay on said farm, it was understood between him and the plaintiff, that the latter might let these cattle remain till the end of foddering time, and be fed upon said hay. They accordingly did remain with the other stock, and were fed by Whiting, till about the 13th day of April 1830, when the defendant attached them as the property of said Samuel Moor, and followed up said attachment by a judgment and sale on execution.

At the time of said sale to the plaintiff, the year, for

CALEDONIA,
    April,
    1833.

Moore
  vs.
Kelley.

which Samuel Moore took the farm, had expired—and, previous to said attachment, Whiting had applied to Gibson to take said farm, but no agreement was made between them upon the subject till after said attachment.

There was evidence tending to show, that, as part of the contract between Gibson and said Moor, the latter was to tend the stock, and feed out the hay on said farm while foddering continued in said Spring of 1830.

The defendant's counsel requested the Court to charge the jury, that, if they found, that said Moor was, by his contract with Gibson, to tend the stock on said farm, till the end of the following season, and that Whiting continued to tend the stock there till the attachment, in consequence of such obligation on the part of Moor, the sale to the plaintiff should be regarded as fraudulent and void in law, as against the creditors of said Moore, for want of a change of possession.

But the Court refused so to instruct the jury—but charged, that, as the term of said Moore had expired and he had left the farm, although they should find that Whiting continued to tend the stock in consequence of the obligation of Moor to do the same, or cause it to be done, yet that was not such a returning of possession by Moore of the cattle sued for, as would render the sale to the plaintiff fraudulent in point of law—and, of course, the plaintiff would be entitled to recover, if they should find the sale to have been made for a full price paid (explaining such considerations) and not with any design to deceive and defraud the creditors of said Moor.

Verdict and judgement for the plaintiff. To which charge and refusal to charge the defendant excepts.—Exceptions allowed and passed to the Supreme Court.

*Argument for the defendant.*—The principle is well settled in this state, that a sale of personal property, to be valid as against attaching creditors, must be accompanied by a visible substantial change of possession. *Durkee* vs. *Mahony*, 1 Aiken, 116; *Boardman* vs. *Keeler*, do. 158; *Mott* vs. *McNeil*, do. 162.

In the case of *Barney* vs. *Brown*, 2 Vt. Rep. 374, and *Spalding* vs. *Austin*, 2 Vt. Rep. 555, the Court relaxed

CALEDONIA,
March,
1833.

Moore,
vs.
Kelley,

this rule, so far as to say, that an actual removal of the property is not in all cases necessary, if there is something equivalent thereto.

In those cases there was a substantial change of possession. The Bailee was notified of the sale, and consented to hold the property in trust for the purchaser. This possession, then, became the possession of the purchaser. But not so in the present case. Samuel Moore, by his contract with Gibson, was to retain his possession of the stock, until the end of foddering time. He employed Whiting to take charge of them, for *him*, and in *his* stead. Whiting's possession, then, became the possession of Moore, and Moore's creditors had a right to treat the property as his, until there was a change of possession. There was no such change. Whiting, without notice of the sale, continued to take charge of the stock for, and in pursuance of his contract with Samuel Moore, until they were attached by the defendant. There was no privity between him and the plaintiff.

The possession remained precisely as before the sale. The cattle were fed from the same mow of hay, by the same individual as servant of the vendor.

Had notice of the sale been given to Whiting, and he had consented to hold the property in trust for the plaintiff, this would have presented quite a different case.

In the case of *Barney* vs. *Brown*, the Court say, that it was the duty of the creditor to make inquiry, and ascertain the ownership. But how could that have been done in the present case? No human being knew of the pretended sale, save Samuel Moore and the plaintiff. Moore, of course, would not be consulted, he being interested to secure the property from attachment. There was nothing to induce any one to suspect, that the plaintiff had any thing to do with it. Of whom, then, should the enquiry be made? Most naturally of the individual, in whose possession the property is found. His answer would be, that it was Samuel Moore's, and that he was keeping it for him.

It is difficult to perceive, that the circumstance of Moore's term having expired, for which he took the farm, can affect the case; inasmuch as the term, for which he had contracted to keep the cattle of Gibson, had not yet

CALADONIA,
March,
1833.

Moore
vs.
Kelley.

expired. Though Whiting was no longer tenant of the farm under Moore, yet he still continued in possession of the stock, in pursuance of his contract with Moore, and as *his* servant and bailee. The present question is therefore altogether independent of the question, whether Whiting still continued in possession of the farm, as Moore's tenant or not? Yet this is made the turning point in the charge of the Court below.

The *principle* of fraud in law is intended to guard against collision between debtors and third persons, by which the property of the debtor is secured from his creditors, by pretended sales, and to prevent individuals from obtaining a false credit as the owner of goods, which they have secretly transferred.

Upon the principle of the decision below, where is the creditor's security? If he attaches the property of his debtor in the hands of his servant, a third person may claim it by virtue of a secret transfer, known only to himself and the debtor, unaccompanied by any visible demonstrations of a sale. In this way, a person by the kindly aid of a friend may put all his property out of the reach of process, and still ostensibly be the owner of his thousands, and in good credit with his neighbors.

In fact every reason, that can be urged in favor of the general rule of law upon this subject, in cases where the actual possession is in the debtor, may with equal propriety and force, be urged in favor of applying it to cases of this kind.

In fine, we know of no better rule upon this subject, than, that laid down by his honor the chief justice in the case *Mot* vs. *McNeil*, that, to render the sale of personal property complete as to creditors, there must be a change of possession, and this must be a visible substantial change, so that the possession will no longer give a credit to the former owner.

*The Council for the Plaintiff*, argued, that the case shows a full and complete change of possession. Samuel Moore, the former owner, had not lived on the farm, where these cattle were attached, during the preceding winter. He was there a day or two, at the close of his lease, to settle his affairs, and divide the stock with Gibson, and sold these two creatures to the plaintiff, in payment of a preex-

CALEDONIA,
March,
1833.

Moore
vs.
Kelley.

isting debt, and then was off again about his other busi-
ness. He had no more control of the farm, or stock upon
it, after the first of April, than any other man. And this
attachment was not made by the defendant till the thir-
teenth of April. The principle of fraud in law has not
been extended to cases, where the property was out of the
possession of the vendor at the time of the sale. We think
the charge of the County Court was correct, and their
judgment ought to be affirmed.

HUTCHINSON, C. J. The only question, raised in this
case, is, whether the instructions of the County Court to
the Jury were correct, upon the subject of the change of
possession at the time of the plaintiff's purchase. It
seems, that Samuel Moor, the debtor had not taken the
personal care of this property for several months previous
to the sale. Of one of the creatures he only became the
owner at his settlement with Gibson, at the expiration of
his lease of the farm. But he was under a contract with
Gibson, the owner of the farm, till the season of foddering
was over ; and, when he went to Northumberland to at-
tend to his lumbering concerns, he left Whiting to take
care of the stock in his stead. Whiting moved into the
house on the farm ; and what he did there, he did as the
servant of Samuel Moore, the debtor. And, when he
made this sale to the plaintiff, it appears to have been a
part of the contract, that plaintiff might suffer the cattle to
remain in the care of Whiting on the farm, where they then
were, and be fed upon the hay of S. Moore, the vendor.—
Thus they continued till April 13th, when they were at-
tached as the property of said Samuel Moore.

The case exhibits nothing, that shows Whiting to be
any other than the servant of Samuel Moore, in all this
business. There is no intimation, that Whiting was in-
formed of this sale to the plaintiff; nor that any person
whatever knew of it, or had reason to suspect it, except
the two Moore's, one of whom was the vendor, and
the other the purchaser of these cattle. As to any cred-
it which might attach to Samuel Moore from his own-
ership of those creatures, it was the same now, as if he
had tarried upon the farm, and foddered them himself, in-
stead of employing Whiting to do it. We consider the
possession not sufficiently changed, to entitle the plaintiff

to hold this property against the creditors of Samuel Moore, his vendor.

The judgement of the County Court is reversed, and a new trial is granted.

*G. B. Chandler*, for defendant,

*I. Fletcher*, for plaintiff.